IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | | |
|---|---|---|
| **GAMMA MU CHAPTER OF KAPPA ALPHA THETA FRATERNITY** | : | |
| 7407 Princeton Avenue | : | Case No.: _____ |
| College Park, Maryland 20740 | : | |
| | : | |
| AND | : | |
| | : | |
| **JANE DOES 1-6** | : | |
| 7407 Princeton Avenue | : | |
| College Park, Maryland 20740 | : | |
| | : | |
| **Plaintiffs**, | : | |
| v. | : | |
| | : | |
| **JAMES BOND** | : | |
| 2108 Mitchell Building | : | |
| 7999 Regents Drive | : | |
| College Park, MD 20742 | : | |
| | : | |
| AND | : | |
| | : | |
| **JAMES MCSHAY** | : | |
| 2108 Mitchell Building | : | |
| 7999 Regents Drive | : | |
| College Park, MD 20742 | : | |
| | : | |
| AND | : | |
| | : | |
| **PATRICIA PERILLO** | : | |
| 2108 Clarence M. Mitchell, Jr. Bldg. | : | |
| 7999 Regents Drive | : | |
| College Park, MD 20742 | : | |
| | : | |
| AND | : | |
| | : | |
| **DARRYLL PINES** | : | |
| 1101 Thomas V. Miller, Jr. Admin. Bldg. | : | |
| 7901 Regents Drive | : | |
| College Park, MD 20742 | : | |
| | : | |
| AND | : | |

|  |  |
|---|---|
| **UNIVERSITY OF MARYLAND COLLEGE PARK** <br> c/o Office of the Attorney General <br> Civil Litigation Division <br> 200 Saint Paul Place <br> Baltimore, MD 21202 <br><br> **Defendants.** | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## PLAINTIFFS' VERIFIED COMPLAINT
## FOR DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES

### Introduction

While Defendants admitted that "no single or specific incident led to [its] decision," the University of Maryland punished every single member and new member of certain categories of fraternities and sororities. This punishment denied college students their First and Fourteenth Amendment rights in a significant manner. As a condition to restoring these rights, the University required that students submit to a mandatory interrogation by attorneys retained by the University under threat of discipline for refusal to comply.

Plaintiffs bring this action to prevent such misconduct from continuing to occur and to enforce their First and Fourteenth Amendment rights. Maryland's directive, both on its face and as applied, unlawfully restricted constitutionally guaranteed rights of the citizens of this State to free expression. Through its directive(s), the University engaged in unconstitutional viewpoint discrimination to remove certain ideas or perspectives from a broader public debate. Moreover, Defendants' post-deprivation statements promoting their actions as a model for other universities to follow demonstrates a credible threat that Defendants will repeat its unconstitutional directive.

**Jurisdiction & Venue**

1. This action arises under the U.S. Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

2. Jurisdiction is appropriate pursuant to 28 U.S.C. § 1331 and § 1343. The Court has supplemental jurisdiction over Plaintiffs' state-law claims under 28 U.S.C. § 1367.

3. The Court has authority to grant the requested declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and Fed. R. Civ. P. 57. The Court is authorized the award attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

4. Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) in that the facts giving rise to Plaintiffs' claims occurred in this district, and the parties either reside or maintain a principal place of business in this district and division.

**Plaintiffs**

5. The Gamma Mu Chapter of Kappa Alpha Theta Fraternity[1] (sometimes referred to as the "Chapter") is a Maryland unincorporated association that has approximately 140 female members, all of whom are current students at the University of Maryland. The Chapter was officially established at the University in 1947, and is a member of the University's Panhellenic Association (PHA).

6. Kappa Alpha Theta's (sometimes referred to as the "Sorority") mission is to nurture each member throughout her lifetime, offering opportunities for intellectual and personal growth.

---

[1] Due to the language used at the time of their formation, several women's organizations, including Kappa Alpha Theta, used the term "fraternity" in their legal name. The word "sorority," which is commonly used now to describe women's fraternities, was first coined in 1882. So, although the term "fraternity" is part of its legal name, Kappa Alpha Theta exclusively admits *women* as members.

The Sorority's values include scholarship, service, leadership, personal excellence, and friendship/sisterhood.[2]

7. Jane Does 1–6 are current students at the University of Maryland and members of the Chapter.

**Defendants**

8. Defendant James Bond is the Director of Student Conduct at the University of Maryland. He has signed and authorized both the First and Second Suspension and No Contact Orders described herein. He is named in his individual and official capacity.

9. Defendant James McShay is the Assistant Vice President for Student Affairs and Interim Director of Fraternity and Sorority Life at the University of Maryland. He also has signed and authorized both the First and Second Suspension and No Contact Orders. He is named in his individual and official capacity.

10. Defendant Patricia Perillo is the Vice President for Student Affairs at the University of Maryland, the individual to whom Defendants Bond and McShay report, and who, upon information and belief, exercises review and control over investigation and disciplinary decisions at the University. She is named in her individual and official capacity.

11. Defendant Darryll Pines is the President of the University of Maryland and, upon information and belief, is the person to whom Defendant Perillo reports, and who is ultimately in charge of ensuring that the policies of the University, including those pertaining to student conduct and discipline, are properly enforced. He is named in his individual and official capacity.

---

[2] *About Us*, KAPPA ALPHA THETA, https://www.kappaalphatheta.org/about-us (last visited April 4, 2024).

4

12. Defendant University of Maryland is a public university of the State of Maryland, and as such, its action and those of its officials undertaken on behalf of the University constitute state actions.

13. Defendants Bond, McShay, Perillo, and Pines are officials of the University of Maryland, and thus their conduct undertaken on behalf of the University constitute state action.

14. Defendants Bond, McShay, Perillo, and Pines also acted in their individual capacities.

## GENERAL ALLEGATIONS

15. In Spring 2018, the University of Maryland adopted a Statement of Free Speech Values, a copy of which is attached hereto as **Exhibit A** (the "Free Speech Policy").

16. The Free Speech Policy provides in part that "a university must protect and guarantee intellectual and academic freedom. To do so it must promote an environment in which any and all ideas are presented. Through open exchange, vigorous debate, and rational discernment, the campus community can evaluate ideas."

17. The Free Speech Policy further provides that "every member of the campus community has an obligation to support the right of free expression at the university, and to refrain from actions that reduce intellectual discussion. No member shall prevent such expression, which is protected under the constitutions of the United States and the State of Maryland."

18. Likewise, the University's Office of General Counsel publicly opined on its website that "public universities, like UMD, are subject to the constitutional restrictions set forth in the First Amendment and thus may not take action which infringes an individual's freedom of speech under the Constitution." The Office of the General Counsel further recognized that "the term "speech" constitutes expression that encompasses for more than just words."

19. Within the context of student organizations, Defendants, through the University's General Counsel's webpage, recognize that:

> Just like students themselves, student organizations at UMD have assembly and speech rights. UMD cannot deny to a group of students recognition as a student organization, so long as they meet established requirements to obtain such recognition…. **Likewise, student organizations can engage in expressive activities on campus consistent with UMD's time, place, and manner restrictions for doing so. To do otherwise would be tantamount to viewpoint discrimination and contrary to our obligations under the Constitution and law**.

(Emphasis added).

20. The University pledges in Section V(B) of its Code of Student Conduct that:

> The Office of Student Conduct provides a fair and balanced University process for resolving allegations of Student Prohibited Conduct. Students will be treated fairly and with dignity and respect without regard to [any] legally protected status…. The focus of the Student Conduct Review Process is to resolve allegations of Student Prohibited Conduct. **Students have the right to be notified of the allegations and specific policies they are alleged to have violated, to have access to the information underlying the allegation(s), and to have an opportunity to respond**.

(Emphasis added.)

21. Section IV of the University's Code of Student Conduct states that the Director of Student Conduct may issue No Contact Orders "whenever **there is evidence** that the continued interaction of the Student with other particular members of the University community poses a substantial threat to themselves or others, or to the stability and continuation of normal University operations including but not limited to individuals' educational or work environments." (Emphasis added.)

22. Defendants define a "Referral" as a report, complaint, or allegation of prohibited conduct against a student, student group, or student organization.

23. The University of Maryland's disciplinary process for both individual students and student organizations commences when the Office of Student Conduct receives and reviews a Referral alleging a violation of the Code of Student Conduct.

24. On February 14, 2024, the Chapter received a written notice—or charge—letter from the University alleging that the Chapter had been "involved in a rush event with alcohol" (the "February 14th Charge Letter"). A true and accurate copy of the February 14th Charge Letter is attached hereto as **Exhibit B**.

25. Defendants did not issue a cease and desist directive to the Chapter or otherwise place the Chapter on interim suspension pending Defendants' investigation into the allegations described in the February 14th Charge Letter.

26. Upon receiving the February 14th Charge Letter, the Chapter and its members fully complied with the University's investigatory process, which included producing the Chapter President for an interview with University representative(s).

27. Less than two (2) weeks later, on February 26, 2024, the Chapter was notified in writing that all "pending charges are hereby dismissed" (the "Dismissal Letter"). A true and accurate copy of the Dismissal Letter is attached hereto as **Exhibit C**.

28. On or about February 22, 2024, Defendants received one (1) Referral containing specific allegations of misconduct concerning one (1) male *fraternity*.

29. On or about February 27, 2024, Defendants received one (1) anonymous email Referral containing various hazing allegations pertaining to male *fraternities*, but not also female sororities, at the University of Maryland (the "Fraternity Referral").

30. On February 29, 2024, Defendants hosted a mandatory meeting for all Interfraternity Council (IFC) and Panhellenic Association (PHA) Presidents and New Member Educators, during

which Defendants claim to have addressed the allegations concerning the various male fraternities raised in the anonymous, February 27th Fraternity Referral, and reminded attendees of the University's policies prohibiting hazing and alcohol use.

31. On March 1, 2024, Defendants McShay and Bond sent the March 1, 2024, Suspension and No Contact Order to Plaintiffs (the "Original Order"). A true and accurate copy of the Original Order is attached hereto as **Exhibit D**.

32. Upon information and belief, the Original Order was only applicable to the social fraternities and sororities, including Plaintiffs, that are members of the IFC and PHA, but not to any other student organizations.

33. The Original Order stated, in relevant part,

> Effective immediately, all [Interfraternity] and [Panhellenic] new member program activities are suspended indefinitely, pending the results of a thorough investigation. Additionally, all IFC and PHA organizations are on social moratorium indefinitely. Social moratorium prohibits the chapter from having any events, on or off-campus, where alcohol is present.

34. The Original Order required that all Plaintiffs "are to have absolutely NO CONTACT with any new member or prospective new member." (Capitalization in original.)

35. The Original Order commanded that "this directive means that every current member of the organization must not contact any new member or prospective new member via in-person, telephone, postal mail, any electronic means (including social media), or third-party communication."

36. The Original Order warned that "failure to abide by this directive will result in disciplinary action."

37. Taken in full, the Original Order prohibited any and all speech between new members and active members of the Chapter.

38. Under the Original Order, biological sisters, roommates, classmates, and best friends were precluded from speaking to each other based solely on the individuals' statuses as new and active members of the same PHA sorority.

39. Taken in full, the Original Order was a complete prohibition on speech constituting an unlawful prior restraint on speech, and improperly restricted associational rights.

40. On March 6, 2024, Defendants McShay and Bond sent the March 6, 2024, Suspension and No Contact Order to Plaintiffs (the "Amended Order"). A true and accurate copy of the Amended Order is attached hereto as **Exhibit E**.

41. Upon information and belief, the Amended Order was only applicable to the social fraternities and sororities, including Plaintiffs, that are members of the University's IFC and PHA, but not also to any other student organizations.

42. The Amended Order allowed affected students to discuss *some* topics, but other topics were still prohibited.

43. The Amended Order provided in part as follows:

> This no contact order is limited to communications regarding Greek-letter organization-related activities. The following communications do not apply to this restriction:
>
> - Communications regarding UMD course-related work;
> - Employment operations;
> - Other UMD organizations and activities; and
> - Functions not related to the Greek-letter organization.

44. While the Amended Order was something less than a complete prohibition on speech, it was a content-based restriction on speech and an improper prior restraint on speech.

45. Moreover, the Amended Order retained the restriction on all "new member activities and all social events involving alcohol."

46. According to the Amended Order, the stated purpose behind the restrictions was:

> To implement a pause on new member activities while the University completes its investigation into widespread allegations of health and safety infractions in organizations' new member intake processes, and to help effectuate a prompt and effective investigation into such allegations. It is critical that the University preserve the credibility of student responses during the investigatory process.

47. The Amended Order warned that "failure to abide by this directive will result in disciplinary action."

48. As a condition to restoring their constitutional rights, the University required that individual new members and active members of the Chapter submit to mandatory interrogations by attorneys retained by the University under threat of discipline for refusal to comply.

49. During the interrogations, some students' cell phones were improperly searched by investigators who threatened individual disciplinary charges against any interviewees who refused to turn over their cell phones.

50. During the interrogations, students were not permitted to be accompanied, in-person, by their own attorneys.

51. Defendants issued the Original and Amended Orders notwithstanding the various statements of the University and Office of the General Counsel professing respect for the protection of freedom of speech.

52. Aside from the dismissed allegation described in Paragraphs 24-27 above, during the Spring 2024 semester and prior to the issuance of either the Original or Amended Order, Defendants had not received any Referrals pertaining to alleged misconduct involving the Chapter.

53. Aside from the dismissed allegation described in Paragraphs 24-27 above, during the Spring 2024 semester and prior to the issuance of either the Original or Amended Order, the Chapter

did not receive any written notice—or charge—letter(s) from Defendants alleging specific violations by the Chapter.

54. Plaintiffs did not receive a post-deprivation hearing following the issuance of either the Original or Amended Order.

55. As such, Defendants did not provide Plaintiffs with due process notice or an opportunity to appeal either the Original or Amended Order.

56. The Original and Amended Orders were issued in the total absence of **evidence** (or even an accusation) that the continued interaction between members and new members of the Chapter posed a substantial threat to themselves or others or to the stability and continuation of normal University operations, as the Code of Student Conduct requires.

57. On March 8, 2024, Defendants stated that "no single or specific incident led to [the] decision" to impose the Amended Order.

58. The Amended Order remained in effect until the afternoon of March 15, 2024.

59. Defendants did not agree to lift the Amended Order until after other fraternal organizations impacted by the Amended Order filed suit against Defendants.

60. Defendants have denied (and continue to deny) that their actions in imposing (or keeping in place) the Original or Amended Orders were unconstitutional.

61. Defendants have not completely and irrevocably eradicated their unconstitutional conduct or the effects of their past violations.

62. Defendants do not believe they acted contrary to law in imposing (or keeping in place) the Original or Amended Orders.

63. Rather, Defendant Perillo has indicated she believes that Defendants "set a model for what [other] universities can and should do" in similar situations.

64. Defendants' policies and practices have violated, continue to violate, and are reasonably expected to violate in the future Plaintiffs' constitutional rights to speech and association.

65. There is a cognizable danger and credible threat of recurrent violation by Defendants.

66. Defendants' policies and practices impacting the speech and associational activities set forth above have a chilling effect on future speech.

67. Defendants' policies and practices described above frustrate the Chapter's organizational mission and have caused Plaintiffs to divert resources.

68. Defendants Bond, McShay, Perillo, and Pines each knew about the University's misconduct and facilitated, approved, condoned, or otherwise turned a blind eye to it.

69. The Chapter intends to continue operating at the University, but the Chapter and its members face real and immediate threats that Defendants will again proceed with investigating and/or imposing disciplinary measures devoid of procedural due process protections, or depriving Plaintiffs of their First Amendment rights, or both.

**FIRST CAUSE OF ACTION**
**Freedom of Speech Violations (42 U.S.C. § 1983)**
**[Against All Defendants in their Individual and Official Capacities]**

70. The allegations of the preceding paragraphs are incorporated herein by reference.

71. The University of Maryland and its officials are state actors subject to 42 U.S.C. § 1983. The individual officials also acted in their individual capacities.

72. By issuing the Original and Amended Orders, each of which contained threats of disciplinary enforcement, Defendants unlawfully infringed on the Plaintiffs' exercise of the rights of free speech to engage with particular members of the University community.

73. Under the Original Order, the Defendants' infringement of Plaintiffs' rights of free speech with respect to particular members of the University community was complete.

74. The Original and Amended Orders constituted unlawful content-based restrictions and prior restraints on Plaintiffs' speech.

75. The Original and Amended Orders did not serve a compelling governmental interest.

76. The Original and Amended Orders were overbroad, as they restricted more speech than necessary to accomplish any purported compelling governmental interest.

77. Both the Original and Amended Orders unlawfully infringed on Plaintiffs' rights, both facially and as applied to Plaintiffs.

78. The Original and Amended Orders unconstitutionally discriminated between categories of speech, based upon both the content of the message that the speakers sought to express and the identity of the speakers.

79. The Original and Amended Orders further operated as unconstitutional restraints because they did not provide a specified brief period for its prohibitory scheme, disallowed the status quo while investigation interviews were completed, and failed to provide a prompt, final disciplinary outcome.

80. The acts described above damaged Plaintiffs, and give rise to a credible threat of future damage to Plaintiffs.

81. Plaintiffs seek declaratory and injunctive relief and nominal and compensatory damages against all Defendants. Plaintiffs further seek punitive damages against Defendants Bond, McShay, Perillo, and Pines in their individual capacities.

### SECOND CAUSE OF ACTION
**Freedom of Association Violations (42 U.S.C. § 1983)**
**[Against All Defendants in their Individual and Official Capacities]**

82. The allegations of the preceding paragraphs are incorporated herein by reference.

83. The University of Maryland and its officials are state actors subject to 42 U.S.C. § 1983. The individual officials also acted in their individual capacities.

13

84. By issuing the Original and Amended Orders, each of which contained threats of disciplinary enforcement, Defendants unlawfully infringed on the Plaintiffs' exercise of their rights to freely associate with particular members of the University community.

85. Under the Original Order, the Defendants' infringement of Plaintiffs' rights to freely associate with respect to particular members of the University community was complete.

86. The Original and Amended Orders constituted unlawful content-based restrictions and prior restraints on Plaintiffs' rights to associate.

87. The Original and Amended Orders did not serve a compelling governmental interest.

88. The Original and Amended Orders were overbroad, as they restricted more associational rights than necessary to accomplish any purported compelling governmental interest.

89. Each of the Original and Amended Orders unlawfully infringed on Plaintiffs' rights, both facially and as applied to Plaintiffs.

90. The acts described above damaged Plaintiffs, and give rise to a credible threat of future damage to Plaintiffs.

91. Plaintiffs seek declaratory and injunctive relief and nominal and compensatory damages against all Defendants. Plaintiffs further seek punitive damages against Defendants Bond, McShay, Perillo, and Pines in their individual capacities.

**THIRD CAUSE OF ACTION**
**Due Process Violations (42 U.S.C. § 1983)**
**[Against All Defendants in their Individual and Official Capacities]**

92. The allegations of the preceding paragraphs are incorporated herein by reference.

93. The University of Maryland and its officials are state actors subject to 42 U.S.C. § 1983. The individual officials also acted in their individual capacities.

94. The University of Maryland's Code of Student Conduct states that the Director of Student Conduct may issue No Contact Orders "whenever **there is evidence** that the continued interaction of the Student with other particular members of the University community poses a substantial threat to themselves or others, or to the stability and continuation of normal University operations including but not limited to individuals' educational or work environments." (Emphasis added.)

95. Plaintiffs engage in expressive association.

96. Plaintiffs engage in speech.

97. Plaintiffs' rights to engage in expressive association are clearly established.

98. Plaintiffs' rights to engage in free speech are clearly established.

99. Both the Original and Amended Order contained a "NO CONTACT" provision. (Capitalization in original.)

100. The University admittedly had no "evidence" that the "continued interaction" of any of the affected students posed a "substantial threat to themselves or others, or to the stability and continuation of normal University operations including but not limited to individuals' educational or work environments."

101. The restrictions contained in the Original and Amended Orders limited interpersonal contact, speech, and association that issued without due process as required by the University of Maryland Code of Student Conduct and the U.S. Constitution.

102. The acts described above damaged Plaintiffs, and give rise to a credible threat of future damage to Plaintiffs.

103. Plaintiffs seek declaratory and injunctive relief and nominal and compensatory damages against all Defendants. Plaintiffs further seek punitive damages against Defendants Bond, McShay, Perillo, and Pines in their individual capacities.

### FOURTH CAUSE OF ACTION
**Challenge to the Regulation (Facial and As Applied)**
**(Art. 40 of the Md. Decl. of Rights & 28 U.S. C. § 2201)**
**[Against All Defendants in their Individual and Official Capacities]**

104. The allegations of the preceding paragraphs are incorporated herein by reference.

105. Article 40 of the Maryland Constitution's Declaration of Rights provides "that every citizen of the State ought to be allowed to speak, write, and publish his sentiments on all subjects."

106. "Article 40 is read generally in *pari materia* with the First Amendment." *Nefedro v. Montgomery County*, 996 A.2d 850, 855 n.5 (Md. 2010).

107. For the reasons articulated in the First and Second Causes of Action, the restrictions on speech and association contained in the Original Order and the Amended Order, both on their face and as applied, infringe Plaintiffs' rights to exercise free speech and freely associate under Article 40 of the Maryland Constitution's Declaration of Rights.

108. The restrictions contained in the Original Order and the Amended Order impermissibly chilled Plaintiffs' protected speech and, without declaratory relief, will continue to threaten Plaintiffs' rights.

### FIFTH CAUSE OF ACTION
**Permanent Injunction**

109. The allegations of the preceding paragraphs are incorporated herein by reference.

110. Plaintiffs have suffered irreparable injury by virtue of Defendants' actions, including but not limited to, Defendants' restrictions and/or prohibitions against Plaintiffs' speech and associational rights.

111. Defendants' unconstitutional policy, practices, and customs are ongoing and continue to violate Plaintiffs' constitutional rights, and as such, remedies available at law, such as monetary damages, are inadequate to compensate Plaintiffs for that irreparable injury.

112. Considering the balance of hardships between the parties, a remedy in equity is warranted.

113. The public interest would not be disserved by the issuance of a permanent injunction prohibiting Defendants from continuing to engage in the conduct described above.

114. In fact, it is in the public interest to prevent the violation of a party's constitutional rights.

115. Plaintiffs are entitled to injunctive relief prohibiting Defendants from restricting Plaintiffs' speech or associational rights without predeprivation notice, an opportunity to be heard, and post-deprivation hearing rights.

### SIXTH CAUSE OF ACTION
**Declaratory Judgment**

116. The allegations of the preceding paragraphs are incorporated herein by reference.

117. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the U.S. Constitution. A judicial declaration is necessary and appropriate at this time as to Counts I through IV above.

118. Plaintiffs seek a judicial determination of their rights against Defendants as they pertain to Plaintiffs' rights to speak to all members of the University community without being subjected to unconstitutional policies that impose prior restraints on speech, and that are vague, overbroad, and not narrowly tailored to serve a compelling governmental interest.

119. To prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment issue, pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, declaring the Original Order and the Amended Order, and any other similar

directives Defendants believe appropriate to impose on Plaintiff to be unconstitutional on their face and as applied to the Plaintiffs.

## Request for Relief

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly and severally, in combination and/or individually, as follows:

A. A declaratory judgment declaring that Defendants' prohibitions on speech and expression contained in the Original Order and the Amended Order are unconstitutional, facially and as applied to Plaintiffs, and that Defendants violated Plaintiffs' rights as guaranteed under the First and Fourteenth Amendments to the U.S. Constitution;

B. A permanent injunction preventing Defendants from continuing to violate the Constitution, and providing other equitable relief;

C. An award of nominal, compensatory, and punitive damages for each violation of the First Amendment rights to free speech and association in an amount to be proven at trial;

D. Plaintiffs' reasonable costs and expenses of this action, including attorneys' fees, in accordance with 42 U.S.C. § 1988, and other applicable law;

E. Pre-judgment and post-judgment interest; and

F. All other relief to which Plaintiffs may appear entitled.

Dated: April 4, 2024				Respectfully submitted,

| | |
|---|---|
| /s/Alfred D. Carry | /s/Micah E. Kamrass |
| Alfred D. Carry (#20711) | Micah E. Kamrass (Ohio Bar No. 0092756)* |
| Robert N. Driscoll* | Ilana L. Linder (Ohio Bar No. 0095622)* |
| *Pro hac vice application forthcoming | Sean P. Callan (Ohio Bar No. 0062266)* |
| MCGLINCHEY STAFFORD PLLC | *Pro hac vice application forthcoming |
| 1275 Pennsylvania Avenue NW, Suite 420 | MANLEY BURKE LPA |
| Washington, DC 20004 | Cincinnati, OH 45202 |
| Tel: (202) 802-9951 | Tel: (513) 721-5525 |
| Fax: (202) 318-1084 | mkamrass@manleyburke.com |
| acarry@mcglinchey.com | ilana.linder@manleyburke.com |
| rdriscoll@mcglinchey.com | sean.callan@manleyburke.com |

*Attorneys for Plaintiffs*

## VERIFICATION

The undersigned, being first duly cautioned and sworn state as follows:

I am the President of the Gamma Mu Chapter of Kappa Alpha Theta Fraternity, having been elected to this position by my Chapter. I am familiar with the various directives adopted or approved by the University of Maryland referenced in the Complaint.

I have reviewed the foregoing Complaint and verify under the penalty of perjury that its factual allegations are true to the best of my knowledge and belief.

*[signature]*

**Dao Doti, President**
Gamma Mu Chapter of
Kappa Alpha Theta Fraternity

 04/04/2024 
Date